Case number 213770 Cardinal Health Inc v. National Union Fire Insurance Company of Pittsburgh. Argument not to exceed 15 minutes per side. Mr. Davis, you may proceed for the appellant. Thank you. May it please the court. Joseph Davis, Wilkie Farr and Gallagher, LLP, on behalf of the appellant, National Union Fire Insurance Company of Pittsburgh, PA. May I reserve three minutes for rebuttal? Sure. Thank you. Two facts are critical to understanding the abuses of discretion that give rise to this appeal. First, there is no other Ohio State Court action involving Cardinal Health or National Union addressing the insurance issues presented by this case. Put another way, there are no comedy concerns here. Second, the District will turn on a specific, identifiable question of novel state insurance law. These two facts distinguish this case from the precedent on which the District Court relied to remand. In each of those prior cases, at least one of the following two things was true. Either there was an underlying state court action that could give rise to conflicting determinations of law or fact, or the court was able to conclude that the declaratory judgment being requested would turn on a particular state law issue that had not before been decided by the state court. And in several of these cases, both of those characteristics were true. So why do you have to have a pending state court case? I mean, I know we have one, and I guess it was argued last fall, but I guess I'm not sure I understand that. And the Declaratory Judgment Act says may, so that's kind of modifying the traditional Article III diversity jurisdiction point. It's not saying you have this right. It's saying you may use this type of cause of action, and you've already acknowledged it's abuse of discretion review. I don't know. I guess all these grand factors, we can talk about everything through that lens if you like. That's fine by me, but I have a hard time just getting off of that threshold point. It says the district court may do this. This clearly is a state law issue. No one's going to challenge that the consequences are not high, right? The consequences are billions of dollars, so that's easy. And presumably, there's not a state law decision, state court decision that completely answers the question, right? I don't think that would be true here. Well, otherwise, we'd have a bad faith problem. Let me start with the question of why comedy is important. I mean, I think if you look at Grand Trunk itself, it really is a comedy case. It's a case about not stepping on the toes of the state court, not encroaching on the jurisdiction of the state court. And so you're right, the Declaratory Judgment Action does say may, but the question is, and it does grant discretion, but the question is how is that discretion to be exercised? And since Grand Trunk, this circuit has developed a series of factors that go into analyzing that discretion. And one important question in that analysis is whether the federal matter would overstep the bounds of jurisdiction of a state court. Where that's not true, the absence of a comedy concern militates in favor of retaining jurisdiction. I think that just to make sure we're on the same page, and what you mean by that is you really think the only time the court can do this exercise of discretion not to take the case is when you can point to other cases in the state court system that are struggling with basically an issue that's identical to the federal action. That's kind of how you're seeing it, right? No? Not at all, Your Honor. I think there are two separate issues. There's a comedy issue and there's a federalism issue. The comedy issue speaks to the question whether there is a pending state court involving the same party. Let's just stay on that one. Okay. I guess I meant to just restate that. And you're saying we know there is a pending state court case. That's not the problem. You think what Judge Sargas did wrong was not show the exact overlap between that case and this one. Have I got that right? No, Your Honor. There is no pending state case. There is no pending state court case that's going to address the insurance issues in this case. So the case argued in October just has nothing to do with this? No. I thought there was a case pending at the Ohio Supreme Court. There is a case pending on the Ohio Supreme Court, but neither Cardinal Health nor National Union is a party to that case. Of course. Of course. Okay. Nothing that a federal court would do in this case would encroach on the jurisdiction, that's the acuity case, would encroach on the jurisdiction of the acuity court. There may be issues that are addressed in acuity that could be relevant in this case, but they're not fact related. They arise out of a different set of facts and circumstances. So it's an entirely different question. Your view of this comedy factor is you've got to have party overlap. That is what gives, that is what implicates comedy. When the federal court... That's the rule? Yes. The Northland case in this court. In other words, you never, district courts never have discretion unless there is overlap between the parties in the deck action and the pending state court case. No. This is one factor. This is one factor. That's not the question I asked. I asked, has any court in the country said you need the requirement of an overlap between the deck action parties and a pending state court case? That sounds utterly implausible to me. No, Your Honor. No court has said that, and we're not arguing that. We're arguing that is just one consideration in the set of factors that a district court should take into consideration when deciding whether to exercise jurisdiction. But counsel, the problem I have is I think Judge Sargas did take into consideration the grand trunk factors, and your argument basically is you just don't like the way he came out after analyzing those factors, that you think that his decision was incorrect. But that's not our standard of review. I mean, we can only reverse him if he's abused his discretion. And even if we would have ruled the other way, since he did apply the law, recognize the correct law, how is it abuse of discretion? Just because he came out the way he didn't like. It's an abuse of discretion precisely on this point of comedy, that he misapplied the law. He misapplied the principles of comedy? I think he recognized it, didn't he? He just didn't give enough weight, or what? No, I don't believe he did. He indicated that there were issues of comedy as there were, for example, in the bituminous case, where there was an underlying state court action, the findings of which could conflict with the federal court action. That is the comedy concern in bituminous. We don't have that situation here. So that was an error of law? That was an error of law, yes. You're really defining comedy narrowly. I do not think that's how that word works. Surely it can apply to situations where a federal court action could decide something in connection where there's a pending state court action, and there's no overlap of parties, but there could be issue conflict. Comedy can apply there too. I'm very confident of that. I can't argue with you in the sense of the vocabulary, Your Honor, but I think there are two different concepts. And I think the concept that is meant to capture that in the Sixth Circuit jurisprudence is more of a federalism concept. In other words, should the federal court be looking at an issue that the state court is looking at that is unsettled, an unsettled issue of law? I don't believe that really has anything to do with encroaching on the jurisdiction of the state court. The state court's jurisdiction extends to the cases that are in front of it and the parties that are in front of it. Whenever a federal court is sitting in diversity, it is going to apply a state law rule of decision. And so simply because a federal court is going to apply a state rule of decision, that can't be the standard here. Otherwise, there would be no declaratory judgments and diversity actions taken up. No, that's the point. It's a total judgment call and it turns on the significance of the underlying state law issues. And one could decide here this is worth billions of dollars or certainly millions. And a judge could say, I just would rather have the state courts have the final say given that there's already some litigation that has some overlap in issues. One could say that. But I'd ask you to look at the three cases on which the district court most heavily relied. Bituminous, Rumph, and Travelers. Taking a good look, right, that's the standard. The district court, take a good look. Taking a good look in each of those cases meant identifying a specific outcome determinative question of law that was unresolved by the state courts. In bituminous, it was the application of a specific workers' compensation exclusion. In Rumph, it was the application of a sexual misconduct exclusion. In Travelers, it was an unresolved state law distinction between medical negligence and ordinary negligence. So in each of those cases, the court determined that resolution of the insurance controversy required a ruling on a very particular question of undetermined state law. That kind of precise identification of dispositive issues didn't happen here. You regard those cases as imposing a rather serious limit on the discretion of the district court, one that's not really supported under the case law or otherwise. Can you tell us how you mesh that interpretation with the more general law in this area? I don't believe it changes the standard of discretion that's to be applied. The point we're trying to make is that in each of those cases, which, by the way, were decided, you know, in the context of summary judgment after a record had been developed. In each of those cases, the court was able to narrow the issue down to a particular question of state law that it could say with some certainty, this is unresolved. Well, you're using the cases to substantially limit Judge Sargis' discretion in this situation, correct? I think we're using the cases to suggest that the analysis that was done in those cases is different than the analysis that Judge Sargis did. So what? He has discretion. And there, you know, he goes through a very careful analysis of each of the grand trunk factors. He does what he's supposed to do, seemingly. I think, well, there were two problems, three problems that we've identified. One is, I think, the comedy issue is a problem, he suggests. We started with two, now we're at three. We haven't talked about factor three, and I don't need to spend any time on that. He just deals generally with the relationship between state and federal courts. And certainly, Judge Sargis' opinion adheres to notions of comedy in showing regard for the roles of the two, of the state courts and the federal courts, correct? I don't think he gives enough credit to the federal side of that equation, right? The question of federalism is a two-sided question. You know, no one disputes that National Union properly removed this, properly invoked the jurisdiction of the court, and that there's diversity jurisdiction here. And the whole point of having a test is to look at both sides, to look at the state interest and look at the federal interest. I see my time is up. Okay, thank you. Thank you. You'll get your full rebuttal. We'll hear from the other side. Thank you. May it please the court, Mark Andrini from Jones Day representing Appelli Cardinal Health. When I was preparing for oral argument last night, it occurred to me that it was probably worth going back to first principles. And I printed out a copy of the Declaratory Judgment Act. And as the chief judge pointed out, it says may. Can I ask you a practical question? Sure. Do you have this pending? The case is still pending, am I right? The case, is it acuity, the case that's at the Ohio Supreme Court? The case that is dealing with one of the issues in our lawsuit is currently pending before the Ohio Supreme Court, correct? And Judge Sargas invoked that litigation, right? No, what do you mean invoked it? Well, mentioned it. Referenced it, right. Because what he said was that very important issue of state law is now before the Ohio Supreme Court. Why am I getting involved in this case? Bingo. So that sets up this practical question. What happens to this dispute once the Ohio case is done, which presumably could happen at any point, right? So just to make sure you understand what I'm asking. So they clarified it. They do what they're going to do. So that feature of Judge Sargas' opinion, that feature of the application of the grand trunk factors is gone. Could they then, could we start anew with this? In other words, and do a deck action again? Because at that point, the law is clear. They do have a right to use diversity jurisdiction. What happens then? So as a practical matter in our case, and it's a very good question. As a practical matter in our case, the acuity decision doesn't resolve all the coverage issues that we have raised, that we raised in the state court. We had essentially 12 coverage issues relating to the duty to defend these opioid cases. Acuity is directed to one of those issues. And that issue, and maybe you're not interested in hearing it, but that issue is whether or not... Well, I mean, but the point is, that's off the table. That's off the table at that point. But that one issue is... What is it, what issue? I am interested. Okay, so the one issue before the Ohio Supreme Court in acuity is whether governmental claims for the cost of responding to the opioid epidemic are on account of or because of bodily injury. And the insurers argue they're not because the government entities that are bringing the lawsuits don't suffer bodily injuries. Policyholders are saying, well, because of its broad and therefore if there's... The opioid crisis has created bodily injuries, so it's because of bodily injuries. And that's the issue relevant to our coverage case. That's before the Ohio Supreme Court. But there are other... That would be a complete defense then to... If acuity is reversed, if the appellate decision is reversed, it would be a defense to many, but not all, of the opioid lawsuits. Because there are not only governmental entity opioid lawsuits, there are also claims brought by individuals. All right. Okay. But you know what my next question is. Doesn't it start all over again? I don't think so, because we still... Sorry, Your Honor. I don't think so, because we have other issues which I can get into, which the magistrate judge pointed out in her report and recommendation. Including, for example, whether there's an occurrence here, because these are occurrence-based policies. So that's an issue that acuity is not deciding. Now, that is an issue that is percolating up through the court system, but it's not been accepted for review by the Ohio Supreme Court. And there are other issues. For example, how to trigger coverage here. When do these commercial general liability policies get triggered for purposes of opioid litigation? And these are all novel, complicated issues of Ohio law that Ohio courts are probably going to wrestle with for years. Just like... I mean, my instinct is we just review the decision as Judge Sargas had it in front of him. Acuity has not been decided. So I kind of get all this. But in a multi-factor balancing test where there's discretion, it does seem funny when a significant factor is pulled out of it and not to let the judge rebalance is the point. Because it is a different case without a pending Ohio Supreme Court decision, which will be dispositive at least on one issue. At least on one issue. And I guess it's possible that the National Union could try to remove the case again and ask Judge Sargas to take jurisdiction again. I hope they wouldn't do that because of all the other novel issues. Now, Mr. Davis, I guess I'll ask him a certain rebuttal. But I think he told us that there were not... There were... That the Ohio law in the area was all settled. That there was no novel issues before the Ohio Supreme Court. The federal court can rule easily because Ohio law is clear. I mean, I'll ask him. But that's kind of my recollection of his argument. Do you disagree with that? Absolutely disagree with it. Okay. And I'll tell you why these insurance issues are novel. It's because the underlying theories in the opioid litigation are novel. They are based on, for example, claims of public nuisance. They are based on civil RICO theories of liability in large part. They are brought by governmental entities as opposed to individuals. And this... And these novel theories of liability give rise to interesting questions and novel questions under the insurance policies. We don't have the usual plaintiffs. We don't have the usual theory of liability that we typically run into when we're dealing with commercial general liability insurance. Which typically, you know, this standard covers tort claims. Most often they're not negligence, recklessness, things like that. And now we have theories of liability that are not only novel, but I mean, every state has its own view on whether or not these remedies are available for the opioid cases. Some states say yes, others no. And in addition to that, I would point out that although this wasn't true at the time Judge Sargis rendered his opinion, states, other courts, including Judge Powell down in Kentucky and the Supreme Court of Delaware have reached a different result than the Ohio appellate court did in acuity. Those other judges essentially disagreed with the result in the appellate court decision in acuity. To suggest that these are simple, not novel, not complicated issues is wrong. That's the acuity issue. I thought Judge Griffin was asking about the other issues. Well, the other issues are as complicated for the same and similar reasons. You have splits in the lower courts in the same way? Pardon me? You have splits in the lower state courts? Absolutely, yes. As to whether, for example, as to whether or not an abatement remedy is a suit for damages. There's splits in lower courts over that as well. So there are many different issues that depend on the nature of the allegations in 3,200 different opioid cases. They're going to raise novel insurance coverage issues that are best decided by Ohio because this policy is construed under Ohio law, which is not disputed here. And to suggest that these are simple issues is simply, I think... You're painting for us a broader picture. Yeah. I gather that you're also telling us that the fact that there's one case now pending in the Supreme Court of Ohio is not indicative of the scope of the problem that ultimately courts will be dealing with. That is correct, Your Honor. And that it's going to be complex, it's going to be in many cases, and there are going to be a number of different issues. Do I get that right? That is absolutely correct. And I would... Mr. Davis asked the court to read bituminous casualties, and I agree that that case should be read and read carefully. In particular, as Mr. Davis points out, there was an underlying, in bituminous casualty, there was an underlying state court proceeding, not involving the insurance company, so it wasn't identical parties, but there was an underlying state court proceeding that was dealing with an issue of who's an employee under Kentucky law. And there's an insurance coverage question, which is who's an employee under the insurance policy? Are they the same question or are they different questions? And Mr. Davis is correct that in bituminous, this court was concerned about the district court weighing in on that issue when a similar issue was pending in state court. But this circuit also held that it was an important consideration under factor four simply because of the novelty of the legal issues. And I'm just going to read this one paragraph from the bituminous. While a district court should not necessarily refuse to exercise jurisdiction because a case involves undetermined questions of state law, it is an appropriate consideration when determining the suitability of a case for declaratory judgment. Is that just language and reasoning inconsistent with the third circuit's recent case? I think so, your honor. I mean, to be honest, I think the third circuit... Consistent with the third circuit? The third circuit, what the third circuit is saying is if you're going to go this novelty route, we need a detailed and lengthy explanation for why you think these issues are novel. This court has never imposed that requirement on the district courts when they're assessing the grand trunk factors. Grand trunk factors are our factors, right? They're your factors, right? And the third circuit... Third circuit has different factors. Third circuit doesn't really control why our own factors, right? That's right. Yes, and in the bituminous, this court said, well, there were two potential unresolved questions of state law concerning these insurance contracts. And that was an appropriate basis for the district court to decline jurisdiction. We have in this coverage case more than two. I mean, our declaratory judgment complaint lists 12. These are issues that we have not been able to resolve with national union. So we brought the declaratory judgment action to declare the rights of the party in state court. These are novel issues of state law. We don't have a bad faith claim. These types of disputes always run through deck judgments. Because, I mean, that's what's... You know, you circumvent the May problem by having a different type of lawsuit in state court, right? Because if it's not deck action, it's just removal. And you have an Article III right to diversity jurisdiction. And the only way to stop that is to certify, right? That is correct. So is it just... This is the way insurance law works. Insurance actions are almost always through deck actions. Deck action is a very common vehicle for resolving insurance coverage disputes. And it's particularly appropriate here because we have so many underlying matters. Over 3,000... Yours was a deck action under state law. Under state law. And then it was removed and then... Why didn't they... So I guess it was that you were clever. You made it a deck action. I don't think we were being clever. I think it was the appropriate... National Union is to... Let's figure out what the rules are and then we'll figure out whether there's coverage and hopefully we can resolve the matter. And if not, we will bring a breach of contract case. But let's figure out what the rules are. Let's say they counter claimed in state court and said, well, we're fine with the deck action stuff but we've got claims at law and equity and they add three other claims, then they remove. But they could try... Now it's not controlled by the May, right? If they had a breach of contract claim and I don't know what that would look like because it's our policy and... Hey, you're the one that said this is all innovative. Right, well, they could be innovative. They could try... I suppose they could try by adding a counter claim to circumvent this issue and try to remove it. We would have to see if there's fraudulent joined or... I mean, kind of fraud going on there. But I don't know what kind of breach of contract claim they could bring that would create diversity jurisdiction apart from the declaratory judgment case. Well, I think we understand your argument. Okay, thank you. Thank you so much. Your rebuttal, Mr. Davis. Thank you, Your Honor. I just want to pick up with the point you made, Chief Judge Sutton, about the acuity case. And you're absolutely right. Once that case is decided, it's going to provide some definitive state law on an important issue. That's the very issue, one of the very issues, that the district court suggested creates the novelty here. And even as he suggested that that case and another case that was recently decided, actually, in the 8th District Court of Appeal, creates novelty, he didn't acknowledge that the decisions in those cases are going to provide guidance. And to respond to your question, Judge Griffin... You didn't move for him to stay his ruling until the acuity case, did you? We did not, Your Honor. But we did point out that that case was going to be decided in the near future and that it would provide guidance. And we don't see in his opinion... Don't we just have to review his decision as he saw it at the time? As he saw it at the time, there was already an appellate court decision. There was an appellate court decision in acuity. There was a trial court decision in a case called Cincinnati Insurance on these issues. So there was jurisprudence directly on these issues in Ohio. But the fact that the Ohio Supreme Court granted leave on the case from the 8th Court of Appeals, that puts the 8th Court of Appeals decision in doubt, does it not? It might, Your Honor. It might very well. It might very well. But that opinion, that case has been argued and the opinion will come down relatively soon and will provide guidance and likely, very likely, almost certainly in the lifetime of this case. And we're not arguing that there's nothing novel at all about these cases, but we are saying these cases, they're seeking insurance under 20-year-old comprehensive general liability insurance policies. Those policies have been interpreted many times by the court. But isn't the asbestos claims, I mean, those are, don't they raise unique and novel new interpretations of insurance coverage? I mean, you don't think so? The opioid claims. The opiates. I'm sorry, did I say asbestos? I had the asbestos case before, but okay. But actually, it's an interesting slip of the tongue. I mean, the notion of having a novel kind of underlying claim is not new. Asbestos is an example of that. But if every time you have some kind of a different kind of a tort claim that comes up, you're going to say that the insurance issues are novel. That really, I think, undercuts the notion that there are basic set of rules that govern these policies. The language has been very similar for decades. And putting a new kind of underlying factual context into the context of those rules, this is something that judges and courts do all the time. Do you, are you disagreeing in any way, Mr. Andrini's characterization of the big picture with respect to these cases, that they involve many, many claims and the claimants are seeking perhaps novel or different or at least complicated interpretations under many of these policies in a number of different contexts. Do you disagree with that? May I respond to the question? I'm out of time. I do disagree. He is correct that they are raising a host of issues and that there are many, many kinds of underlying claims. To just give one example, many of those thousands of claims that they're seeking coverage for are in fact simple, basic personal injury tort claims. Same kind of, the only difference is that the product here is opioids and it's not asbestos. That distinction doesn't make those kinds of issues novel. The novelty that opposing counsel was referring to really arises out of one particular set of these claims, which are actions brought by governments, by municipalities for economic damages. That doesn't cover the whole panoply of what's at issue here. Okay. Both of you for your arguments and for your helpful briefs, we appreciate it. Case will be submitted and the clerk may call.